Your Honor, this is the first case of the morning, 12-2-10-11, Gloria C. Krosophersen v. Rain B. W. Franklin. On behalf of the appellant, Mr. Thomas Gooch. On behalf of the appellee, Mr. Timothy Shelton. Good morning. Good morning. Mr. Gooch. Your Honor, this matter comes to you from Wake County after the granting of a summary judgment motion against Gloria Krosophersen in a legal malpractice case. It presents the question of the discovery rule and its application to a statute of limitations. I think it raises the issue of at what point do you cut off the rights of a citizen to her day in court based on legal argument that she should have known sooner or discovered sooner the malpractice of her attorney. And an issue in this case are a series of hearings following Ms. Krosophersen's divorce, which occurred on June 25th, 2004. Thereafter, there were post-decree hearings on November 10th, 16th, and 19th of 2004. There's no question that the plaintiff did not fare well in those hearings. There's no question that the plaintiff was upset in those hearings. The defendant in the malpractice case has seized upon those hearing dates as the time that the statute of limitations would have become known to strike that. At the time, Ms. Krosophersen would have been aware that her attorney had done something wrong. However, as you're reviewing the motion for summary judgment de novo, it's important to look at the statement of material facts and issues filed by Ms. Krosophersen, which sets forth her mindset at the time and the constant reassurances of her attorney, Mr. Franklin, that... I'm sorry. Go ahead. I'll let you finish your sentence before I ask the question. Go ahead. That everything was progressing as best as it could, that the law was simply against her. The question that I have is you do argue with regard to the summary judgment motion and ruling of the court that the court ruled on the basis of there being a bright line rule that the statute of limitations begins to run at the time that she met with successor counsel. My question to you is where in the record do we know that? Where is it indicated? Is there a transcript that was included that shows that? No, ma'am. In my motion for reconsideration, I cited the court's decision that that was bright line law. There was never a dispute that at the time of entry of summary judgment and any responses to that motion for reconsideration that the court had accepted the Barrett case as bright line law. Well, but now, again, you said you argued that at the trial level. Where... where... aren't we required under Fouch v. Bryant to accept the fact that the trial court was correct if there is no transcript of his ruling? There is a transcript of his ruling in the motion for reconsideration. There was not a record made at the time of the argument on the summary judgment motion of his ruling. The basis for the motion, if you read the motion for summary judgment, was the Barrett case as well as other cases holding that the November hearings would have put her on notice. It's our position that the Barrett case influenced the trial court in that decision. And I think you can see it well in the brief on the summary judgment motion that Barrett influenced the trial court. So it's your position, when does the statute begin to run then? We believe the statute began to run at the time the cause of action accrued. The time of judgment of dissolution, if she was aware of it. But she did not discover it until late in 2005 when her new attorney, Mark Smith, and this is supported by his deposition testimony, in September or late summer of 2005, realized that there was a malpractice issue and so informed her. All right, let's take your argument. In essence, you seem to be saying the limitations period begins to run when the plaintiff knows or reasonably should know of the injury and that the injury was wrongfully caused. Is that what you're saying? It's when the plaintiff is aware of this. Yes, sir. All right. What about this, the deposition that your client testified in that she said when she retained Smith on February 7th, 2005, to, quote, rectify what had taken place in November? What does that suggest to you? It suggests what she said, that she was not happy with the decision, that she had been told that that was the law and she wasn't ready to give up. And she also said in her deposition she wanted a fresh look at things. And I think, you know, the most compelling reason that I believe what I just said is correct is she paid Mr. Franklin in January. I'm going to tell you from having done a bunch of these cases, people who think their lawyers did something wrong don't pay them. I think I think we can probably all agree on that. Somebody who's thoroughly annoyed with their lawyer, believes their lawyer has been negligent, doesn't pay them in full. And in fact, she hadn't even terminated his representation in February. She did, as she said in her deposition, she had been online, she had found a divorce rights group, and from whatever she read, suggested that she get a second opinion. That's what she was doing. But not a second opinion of Mr. Franklin's negligence, a second opinion to see if there was still something that could be done to rectify her divorce decree, which she said and described as she got 60 percent of nothing and her husband got 40 percent of everything. Mr. Gooch, didn't she send an email to Mr. Christopherson indicating that she had been represented by a lawyer in an unrelated automobile accident case? And that lawyer told her, it sounds like you have some malpractice. If you look at the date of that email, Justice Shostak, you'll see it's in January 2006. That's the date that she sent the email to Christopherson that she says it was some unrelated auto case. Do you know when she had the conversation? She had the conversation with an attorney by the name of David Pardis. And in her affidavit, she explains that that took place late in 2005, and the email was dated immediately thereafter in January. You see, with these cases, all of these different factors, I mean, they can be interpreted one way, they can be interpreted another way. But isn't that why we have Jackson Jordan? I mean, that's what the Supreme Court has said in almost every case. These are factual questions. And we maintain that Ms. Christopherson should have the right to be judged by a jury as to her credibility, her reliability, and the veracity of her testimony. All right. But she knew, did she not, in June she didn't get maintenance when that divorce decree was issued? I'm sorry, ma'am. One of my hearing aid batteries are dead. She was not awarded maintenance. She knew there was a problem with the disability aspect of the pension. She knew that in June, and she knew that in November. Isn't that correct? She knew all of those things. However, she had an attorney telling her that's what the law is. Not saying there's something that I didn't do that I could have done. What he said to her, and it's replete, and the complaint is replete in our own statement of material issues. He continuously reassured her that everything happened in the best possible light, that that's what the law is. And when you say what evidence in the record is there that he reassured her, isn't that what she alleges in the complaint? But where else is that in the record? It's in her affidavit and it's in her deposition. In her deposition? I believe it's in her deposition also. Well, maybe you can point to where in her deposition that is. If you can't do it now during this part of the argument, maybe on rebuttal you could point there. Because I have not remembered seeing that in the record. Counsel, your position seems to be, in essence, the day of discovery is normally a question of fact. In this case, it should be a question of fact. Is that sort of your bottom line position? It's a factual question. When the discovery rule kicks in, in this case, as in nearly every case, it's a factual question. Generally. I mean, sometimes the facts can be so undisputed you'd have to concede that they wouldn't be. And I think that's what Jackson Jordan says. And that's why they don't say it in every case. But in this case, there are different interpretations. And if there are different interpretations, why would we not hold a defendant to prove affirmatively that the statute of limitations did wrong and give Ms. Christofferson her day in court? Now, if a jury says, we don't agree with your interpretation, we're going to find the statute ran, then that's it. The fact of the fact has made a decision. But in these kind of cases where there's more than one interpretation, a citizen should get her day in court. And I think that's what we're here to say. The final comment on the Barrett case, I don't believe the Barrett case has any application. And I think the simple fact that you go to see an attorney should not be held as putting you on notice if there's a claim to legal malpractice in any case unless it's fact specific to what was discussed. That's what happened in Barrett. I mean, they agreed and she agreed and she was told that she had a cause of action for legal malpractice. This court and Rackett made it clear, and the court should continue, in my opinion, should continue to follow Rackett as well as Jackson Jordan. Thank you very much. Thank you. Mr. Shelton. Good morning, Your Honors. Good morning. Tim Shelton for the defendant. A citizen, including a plaintiff, is entitled to a day in court if she meets her burden of proof. The burden of proof in this case is on the party who is relying on the discovery rule. She had to come forth with some real evidence that there was a factual dispute as to when she suffered a wrongfully caused injury, when she knew or reasonably should have known. She discovered that. Now, they allege in their complaint, it's actually stated in paragraph 12, as early as November 2004, she complained to defendant about his inaction and that she did not agree with the way the case was being resolved or handled. 2004, that's November, that's two years and three months before she filed suit. So you're not suggesting that because a client questions what an attorney is doing, that that automatically gives rise to triggering a statute on a potential malpractice case? Not automatically, no. No. But when she specifically, she knows she's injured. We've got that established. She was injured in June 25, 2004, with the adverse ruling on the maintenance. By November, she knew she was not getting pension. By her own account, she's strapped with 100% of the debts. So she's definitely injured. Okay, so the question is, does she know that it's wrongfully caused? She certainly, the evidence establishes that she knew it was wrongfully caused. She was upset with the way he handled the case. She wrote him in November 10th saying, this is not going right. He had apparently told her to get over it. She goes, get over it. How can I do that? It's not being done, handled well. And by January 2005, she's writing and saying the stipulated trial was a mistake. In November during the hearing, she said, this is not going right. What's happening here with the pension? I want you to do something. He didn't do it. These suggest to me that she knew she was wrongfully injured. But the next step is then she is on notice to inquire whether there's an actionable injury, whether there's actionable conduct. But she went ahead and paid him in January 2005. How do you respond to counsel's argument that someone wouldn't have paid their attorney if they knew that the injury was wrongfully caused? I just have to say that I don't agree that people don't pay their debts. I pay taxes. I don't necessarily agree with where it goes. My money's going. I don't see that that's relevant in any direct way. Well, you have a choice. You don't have a choice to pay your taxes. She had a choice not to pay her lawyer. Isn't that true? Well, yes, possibly. I personally wouldn't feel I had that choice. If I have a debt, I think I would take care of it. In fact, taking care of it might have been a very good idea to clear the table. Now let's go after other problems. In light of the fact that this is a divorce case, don't you believe, I mean, you stood up and said you practiced, you're a reasonable person, you've practiced law for a long time. How many divorce cases are people actually very happy with their lawyer when the divorce is over? Probably not many. Correct. So the fact that she was unhappy with him and the fact that she didn't like the outcome or the result, could you imply that that means that at that point she was on notice? Not that she just didn't like the result, no. But when she is affirmatively saying to him, you mishandled the trial of this, you made a mistake in having a stipulated jury, I would do it again. I wish I could go to the judge myself, but I can't do that. When he is saying to her, she said he screamed at her during the hearings and she felt that she was no longer being represented by him, I think we've gone past just, yes, you're angry and upset. Any loser is, and the cases all discuss that. That's why it's very hard in any malpractice case, the loser is upset with the result. It doesn't necessarily translate into a cause of action. But it does, if you feel it's wrongful what's happened to you, then you have to inquire further whether you have an action. Is there something going on here? How do you factor in or put in context a successor counsel's testimony that he thought what he was going to do was just clean up the mistakes or clean up the case? How does that fit in to the picture here? Does that indicate that maybe she didn't have the knowledge of a wrongful injury? Justice Hudson kind of hit the point there, I thought, about the testimony when she said that she went to him to rectify. And more to your point, it's the plaintiff who should reasonably know. I mean, the law is very clear that you don't need an attorney to tell you his later testimony about what he thought he may or may not have said at that point to her why he thought she came to him. It's not important. It's what was in her mind. And she says her own testimony. She was asked, what exactly were you retaining Mr. Smith to do, to try to rectify what had taken place in November? Are you talking about November 10th, 16th, and 19th, the whole month of November, the entire month of November? Yes. The mistakes that were made there that you felt were wrong, you wanted Mr. Smith to correct those. Yes. So you're equating mistake with wrongful injury. Is that right? Correction of mistake. Can a client know intuitively something is not right with the judgment or with the result of the case without necessarily knowing that the attorney committed malpractice? You seem to be blurring the distinction. You seem to be saying, well, when the client recognizes there's a bad outcome, they're sort of unnoticed that maybe their attorney did something wrong. Where in the law do you reach that conclusion? Well, I don't think I just said what you said. I don't think I'm saying that just because I'm saying when she is affirmatively saying you have made mistakes, I don't like the way you're handling the case. We've gone beyond a murky area of I'm upset and injured. I think we've moved into she is conscious that this attorney has failed her. At that point, you know, that's not at that point. You are on notice to inquire further. Now, would you acknowledge it under the case law? It's pretty clear that the data discovery is generally considered to be a question of fact. Is it not? Yes. So what is it about this case? It takes it out of the realm of that well-settled rule. What specifically takes this case? Well-settled rule is this court ruled in Raquette. It's not the cases that rule. You don't get you have to go to jury. Require demand quite a bit more from the plaintiff for this case does in terms of evidence that there is a factual dispute. The Raquette actually stands for the proposition. The holding of Raquette is the plaintiff has to know a date before which she could not have been injured. That is what Raquette holding actually states. I have here somewhere. In other words, in Raquette, there was a time period chief. The question was whether a notice of appeal had been filed. And I think it was October 20th was the two year mark. The statute of limitations. She did not know. And because her attorney told her. Let's go to the reassurance issue. Told her that he would file the notice of appeal. So she wasn't worried about that. October 30th. He told her I didn't file it. Justice McLaren said if that is the date. That she the first date she could have known at the earliest of her tort. And it's very specific. We have here no specific date or event being presented. Other than the adverse judgments and the hearings. And the consultation with attorney. We have all of those. Those are all pre the statute of limitations. We have nothing afterwards to suggest this is the date. When she could have learned the only the first time she could have learned about this. That seems to be the burden. According to this court's holding of Raquette. That is what the plaintiff has to come forward with. That kind of definite distinct evidence. You can't just sort of generally talk about fuzzy. Say sometime in the future. It had to have happened after the statute of limitations began to run. And I'm a citizen. I have a right. No. The burden is a little tougher than that. Butler versus Mayor Brown. The same thing. The attorney assured her that he was going to file an appeal. That the judge had made an error. Not her. The plaintiff. Defendant. Plaintiff. Whoever it was. The defendant said, I am going to file an appeal. The judge is wrong. Here. The defendant said the judge got it right. I'm sorry. There's nothing that can be done. You have no recourse here. There can't be a better result. Get over it. It was pretty made pretty clear to her that he wasn't doing anything. But how did she know at that point that he was wrong and she was right? I mean, don't you rely on the advice from your lawyer? The lawyer said to her, there's nothing that can be done. This is what the judge did. This is why it's going to be. Get over it. You know, I guess my question to you is, what level do you put her? It seems to me that you're putting her at an equal level with the thought processes of a lawyer. She's just, she's a lay person, isn't she?  And in Raquette, the plaintiff was a lay person. But she managed to come up with a date when she could have learned the first time she could have learned at the earliest of her tort. And didn't this woman come up with a date that she felt was the first time that she learned? I'm unaware of it. If she did. I don't think there's any date. The closest she comes is that the attorney she consulted with later told her that that's what had happened. But her own testimony undermines that when she says, I went to him to correct the mistakes, to rectify the problem. We don't have anything other than her averment, if that's a word. What about her affidavit? Didn't she also say she hired Smith because she had no reason to believe something had been done wrong? And she hired Smith because she wanted a fresh approach and a fresh look? Doesn't that sort of, you know, create a question of fact? Well, it creates a question of fact about whether she was being honest then or honest during her testimony when she said, I went to him to correct the mistakes, to rectify what had happened. Isn't that a question of fact? It's her own testimony that's in effect. Isn't that a question of fact? Which one was true of what she said? It is if you want to, I mean, under this court's ruling and other rulings of Illinois courts, it's not enough of a question. Her burden is to make the discovery rule work for her. She brought it up. She said, I rely on discovery rules. She has to make it effective. And just sort of throw out various facts about, well, it could have been here, it could have been there. I'm muddying up things enough to get a question of fact. That isn't meeting the burden of the discovery rules very clearly laid out. No reasonably should have known at least enough to be on notice to investigate further whether the conduct of the attorney is actionable. She's got some responsibility here. You can't just, I really don't, I understand. I'm not trying to put her in the position of a lawyer. I don't think that's fair at all. And the cases often say that. But at some point, the lawyer has to be protected too from her inaction, her sluggishness about looking into what was really going on, if she thought something was really going on. And all the evidence says she thought something was going on. Her own allegation was in November 2004. She did not agree, she says, with the way the case was being handled. It's... You aren't saying that bad outcome equals malpractice, though? No, absolutely not. No, no. It's maybe a first red flag that something... Maybe. But then even not. I mean, I know. There is a loser. I mean... I don't want to take your time. My son plays soccer. If he loses, I blame it on the ref. Something went wrong. No. He's unhappy. We're unhappy. We lost. There is losers. You are unhappy. Okay. But then you start to... Then if you think, well, but you know that ref. He did call it wrong. Things were called wrong. And we didn't respond right. Something went bad. Something was wrong. When that gels after a while, you've got to kind of say, well, let's look into this. It's not a great analogy, the soccer game. But the point is, yes, no, it's not a bad outcome. It's not malpractice. But when you're upset about it, and you are pointing your finger at the attorney, which she was doing. There's no question. She was pointing her finger at him, blaming him. And then she was on notice. And at the latest, when she went to an attorney and said, I want you to fix what happened, she was on notice then, for sure. On notice of a bad result or on notice of malpractice? No, of malpractice at that point, yes. The bad result, she was on notice when the adverse decision drew no question. She lost the maintenance. Then she lost the pension. And she lost the, she had all the debts. All that happened in 2004, right? But by then, she is complaining and saying, I don't like the way this case is going. I don't like the way you're handling it. She alleges that clearly. By January, she's written a letter saying, again, I think the other attorney was better prepared. We shouldn't have had a stipulated trial. I would have had witnesses. This didn't go right. She goes to another attorney and says, I want you to rectify what happened. I want you to correct the mistakes. Well, maybe she believes it's correctable. No harm, no foul. She believes it can be corrected. Why would she jump to the conclusion that she has a malpractice case? I'm not saying that she should jump to that conclusion. I'm saying that she was on notice to inquire further under the law as to whether she had a malpractice case. I mean, the cases are not absolutely clear about this. But Butler sets it out pretty clearly in other cases, too, that there's different stages. You know that you're injured. You know that it's wrongfully caused. Then you have to start figuring out whether you have an actionable conduct. You don't have to know that you're injured and have actionable conduct, legal malpractice, at the same moment, at that point in time. But then you're supposed to start looking at it. And you've got two years. Legislature courts give you a long time to go find out. And she finally did go to Smith to find out. That's what she said she knew and wanted, not what he said. Okay? Thank you. Thank you. Mr. Gooch? What Mr. Sheldon and I have done here this morning, I think, is argue factually our respective positions on what the parties meant in this case. And I think that sets forth exactly why this case should go back to Lake County for trial. There is, as a matter of law, I don't see how we can conclude as a matter of law that she knew or should have known on any of these dates in question that she could be committed to legal malpractice. I can't find a deposition excerpt directly, so I only have some excerpts with me. I would suggest page 55. She testifies that she still trusted Mr. Franklin because she was still his lawyer. That was at the time of her interview with Mark Smith in February. Her affidavit is replete with statements of what Mr. Mr. Smith had said. Senator, I would suggest to you paragraphs 913. 913 of the primary loans, as well as 1617. It is an affidavit, but it's an affidavit that does not conflict in any way with her deposition testimony. Are you going to be sure that was struck? Well, the reassurances really appear in the complaint. I mean, her statements regarding his reassurance is in the complaint. You certainly can't use the complaint. No, but she reset in her affidavit in response to some of the judgment motion. She set forth what he had told her in those paragraphs I just gave you. And that affidavit was unrebutted. And their reply, they never attempted to submit an affidavit by Mr. Franklin denying it. Counsel, your opponent places a great deal of emphasis on the holding of the Raquette case, which was decided in this district. What's your response to whether or not Raquette is controlling in this instance? I don't think it has any control in this case. I don't believe that she has this responsibility that he puts on her. She's a layperson. We can't we can't take these people and put them in a position of attorneys. We don't allow them to testify to negligence at trial because they're laypersons. We can't put a higher weight on them on these things. It's just not fair. It's fundamentally unfair to do such a thing. Thank you. Thank you very much. Thank you, Counsel. At this time, the court will take the matter under advisement and render a decision in due course.